UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIFFANIE EDWARDS,

               Petitioner,           Case No. 2:22-cv-10760
                                         Honorable Linda V. Parker

v.

JEREMY HOWARD,

               Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS**
**(ECF No. 1), DENYING A CERTIFICATE OF APPEALABILITY, AND**
**DENYING RENEWED MOTION TO EXPEDITE (ECF No. 10)**

This is a habeas case filed by a Michigan prisoner with the assistance of

counsel under 28 U.S.C. § 2254. On March 16, 2016, Petitioner Tiffanie Edwards

was convicted of manslaughter, Mich. Comp. Laws § 750.321, following a jury

trial in the Wayne County Circuit Court. The trial court sentenced Edwards as a

third habitual offender, Mich. Comp. Laws § 769.11, to 12 to 30 years'

imprisonment.

The habeas petition raises three claims concerning ineffective assistance of

trial counsel, prosecutorial misconduct, and ineffective assistance of appellate

counsel.  For the reasons explained below, the Court **DENIES** the petition.  The

Court also denies a certificate of appealability and denies Petitioner's renewed motion to expedite as moot. (ECF No. 10.)

## I. Background

Edwards' conviction arose from a fatal stabbing on a public transportation bus in Detroit, Michigan. This Court recites the facts from the Michigan Court of Appeals' opinion affirming her conviction, which are presumed correct on habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the fatal stabbing of Charla Williams on a Detroit Department of Transportation (DDOT) bus. On August 26, 2015, both defendant and Williams were riding a DDOT bus driven by Sherri Stroud. According to eyewitness testimony at trial, defendant and Williams became involved in a verbal argument while on the bus. There was testimony that defendant had a pocket knife in her hand and that she showed a steak knife that she was carrying in her purse to Williams. Defendant stated, "I told you I don't play with bitches; this is what I do." Defendant also stated, "I cut bitches," and indicated that she was known for cutting or "stabbing bitches." According to the testimony, as Williams prepared to get off the bus at a bus stop, she shoved her walker into defendant's legs. Defendant and Williams started arguing again, and Williams pushed the wire basket from her walker into defendant's face. There was testimony that defendant and Williams started fighting and that defendant had a knife in her hand during the fight. There was further testimony that defendant swung the knife at Williams, that Williams received cuts on her face and neck, and that Williams put defendant in a headlock. Two bus passengers separated defendant and Williams, and defendant ran away.
>
> Dr. James Lozano, of the Wayne County Medical Examiner's Office, testified that Williams died from multiple sharp force injuries and that the largest contributor to Williams's death was the wound to her neck, which was 3 inches deep. According to Dr. Lozano, this cut perforated

2

Williams's common carotid artery and internal jugular vein, and it also went into her chest cavity and punctured the upper lobe of her left lung. Defendant was charged with first-degree premeditated murder.

At trial, defendant testified that Williams yelled at her on the bus after she had tried to console Williams following an argument that Williams had with a different passenger. According to defendant, when Williams went past defendant to get off the bus, Williams "rammed" her walker into defendant's back. Williams then "rammed" her walker into defendant a second time with more force. Defendant testified that she told Williams that she "could have said excuse me," and defendant denied making any threats. According to defendant, Williams yelled at defendant, called her names, and "chest bumped" defendant three times. Defendant testified that she was scared because Williams was twice her size. Williams then punched defendant in the face with the wire basket from her walker, and defendant reached for her pocket knife and opened the blade. Defendant testified that she went for her knife to protect herself and that she swung the knife at Williams multiple times because she thought Williams would keep attacking her. Defendant testified that Williams charged at her, put her in a headlock, and punched her in the face. Another passenger pulled defendant out of Williams's arms and off the bus. According to defendant, she left the scene because she did not want to be attacked further, and she did not know that Williams had died until she saw the report on the news that night.

The jury convicted defendant of voluntary manslaughter, and this appeal followed.

*People v. Edwards*, No. 333343, 2017 WL 6542546, at *1–2 (Mich. Ct. App. Dec. 21, 2017).  On March 16, 2016, the jury convicted Edwards of manslaughter.  On April 19, 2016, the trial court sentenced Edwards as a third habitual offender, Mich. Comp. Laws § 769.11, to 12 to 30 years' imprisonment.

Edwards filed an appeal as of right in the Michigan Court of Appeals, raising claims concerning insufficient evidence, judicial misconduct, and evidentiary error.

3

On December 21, 2017, the Michigan Court of Appeals affirmed Edwards'
conviction and sentence in an unpublished opinion.  *Edwards*, 2017 WL 6542546,
at *1–2.  Edwards then filed an application for leave to appeal in the Michigan
Supreme Court.  On May 29, 2018, the Michigan Supreme Court denied the
application on the basis it "[was] not persuaded that the questions presented should
be reviewed by this Court."  *People v. Edwards*, 911 N.W.2d 707 (Mich. 2018).

On August 21, 2019, Edwards returned to the trial court and filed a motion
for evidentiary hearing and a motion for relief from judgment under Mich. Ct. R.
6.500, *et seq.*, raising claims concerning: (1) ineffective assistance of counsel; (2)
prosecutorial misconduct; and (3) ineffective assistance of appellate counsel.  (ECF
No. 6-18, PageID.1128.)  On January 15, 2021, the trial court denied the motions,
addressing Edwards' claims on the merits.  (ECF No. 6-20.)

Edwards filed a delayed application for leave to appeal in the Michigan
Court of Appeals.  On July 6, 2021, the court denied the application on the basis
that Edwards "failed to establish that the trial court erred in denying the motion for
relief from judgment."  (ECF No. 6-22, PageID.1386.)  Edwards filed an
application for leave to appeal in the Michigan Supreme Court, which was denied
because Edwards "failed to meet the burden of establishing entitlement to relief
under MCR 6.508(D)."  *People v. Edwards*, 971 N.W.2d 620 (Mich. 2022).

4

On April 8, 2022, Edwards filed the present habeas petition through the assistance of counsel.  The Court understands the petition as raising the following three claims:

I.      Petitioner was prejudicially denied her right to effective assistance of counsel where trial counsel failed to obtain and present witnesses and documents in support of the defense.

II.     Petitioner [was] denied a fair trial where the prosecutor introduced inadmissible evidence ruled untimely and also misled the jury about critical facts and evidence.

III.    Petitioner was prejudiced by ineffective assistance of appellate counsel, satisfying good cause permitting review of Petitioner's issues on the merits to determine prejudice.

(ECF No. 1-1, PageID.5.)  On October 19, 2022, Respondent filed an answer and the relevant state-court record maintaining that Edward's claim II (prosecutorial misconduct) is procedurally defaulted and all claims lack merit.  (ECF No. 5.) Edwards filed a reply on December 3, 2022.  (ECF No. 7.)

## II.   Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal

6

habeas review.  *See* 28 U.S.C. § 2254(e)(1).  This presumption is rebutted only

with clear and convincing evidence.  *Id*.  Moreover, for claims adjudicated on the

merits in state court, habeas review is "limited to the record that was before the

state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Discussion

### A. Procedural Default

At the outset, this Court notes that although Respondent argues Edwards has

procedurally defaulted her prosecutorial misconduct claim, this Court is not

obligated to address that defense because procedural default is not a jurisdictional

bar to merits review.  *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020); *Trest v.

Cain*, 522 U.S. 87, 89 (1997)); *see also Hudson v. Jones*, 351 F.3d 212, 215 (6th

Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) ("[F]ederal

courts are not required to address a procedural default issue before deciding against

the petitioner on the merits[.]")

The Sixth Circuit recognizes that decisions "may sometimes reach the merits

of a petitioner's claim, particularly when the merits are easily resolvable against

the petitioner while the procedural issues are complicated."  *Smith*, 962 F.3d at 207

(citing *Lambrix*, 520 U.S. at 525).  Here, the procedural-default analysis will not

affect the outcome of this case, and it is more efficient for this Court to proceed

directly to the merits of Edwards' claims.

**B.  Ineffective Assistance of Trial Counsel**

In her first claim, Edwards argues that trial counsel was ineffective for failing to adequately prepare for trial and investigate her criminal case. Specifically, she claims that counsel failed to properly investigate and call an exculpatory defense witness, investigate and obtain medical records related to the victim's mental health, effectively cross-examine witness Christopher Taylor, and object to testimony and request a mistrial based on the improper admission of evidence.  Edwards raised these arguments in her motion for relief from judgment and they were rejected by the trial court.  (*See* ECF No. 6-20.)

On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Edwards must show that the state court's denial of her claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel.  A habeas petitioner must show: (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *See id*. at 687.

The standard for obtaining habeas corpus relief is "difficult to meet."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created

by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).  "[T]he question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### a. Failure to Call Defense Witness

Edwards argues that trial counsel was ineffective for failing to interview and call eyewitness, Bill Kelly, to testify at trial.  The state court record shows that Kelly witnessed the altercation between Edwards and the victim while seated on a park bench near the bus.  (ECF No. 1-8, PageID.74.)  Edwards asserts that Kelly was a favorable witness based on his statement to police that he saw the victim attack her.  (*Id.*)  On the morning of trial, trial counsel erroneously believed that Kelly would be called as a witness based on an unendorsed witness list provided by the prosecutor.  (ECF No. 6-10, PageID.396.)  Despite this error, the trial court allowed counsel to present Kelly as a witness, if he could be located.  (ECF No. 6-10, PageID.398.)  Counsel was ultimately unsuccessful in locating Kelly.  Edwards now argues that trial counsel was ineffective for relying on the unofficial witness list and failing to make sufficient efforts to locate and subpoena Kelly to testify at trial.

The trial court rejected this argument on postconviction review stating, in pertinent part, that:

> In this case pending before this Court, Defendant merely alleges that Bill Kelly provided a favorable statement to police. While Mr. Kelly's statement is attached to Defendant's motion, Defendant has provided no other evidence to support an ability to find Mr. Kelly or his willingness to testify at trial. Furthermore, as indicated at the preliminary examination, Mr. Kelly was unable to be found by the City of Detroit Police Department. Without more evidence, this Court cannot find trial counsel was ineffective for failing to call Mr. Kelly— there is no indication as to what the testimony of Mr. Kelly would be, outside mere speculation based on his statement given to police.

(ECF No. 6-20, PageID.1172.)  The trial court's ruling was neither an unreasonable application of federal law, nor did it contravene clearly established Supreme Court precedent or the facts.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003).  The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005).  However, "[i]f counsel does not conduct a substantial investigation into each of several plausible lines of defense, assistance may nonetheless be effective." *Strickland*, 466 U.S. at 481.  Moreover, "[d]ecisions as to what evidence to present and whether to call or question witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence can constitute ineffective

assistance of counsel only when it deprives the defendant of a substantial defense."
*Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004).

As mentioned, trial counsel believed that the prosecution intended to call Kelly to testify. Even assuming counsel acted unreasonably by relying on an unofficial witness list, the trial court ultimately permitted counsel to call Kelly as a witness. While trial counsel was unsuccessful in contacting Kelly, the record suggests that even if counsel had made efforts to contact him sooner, such efforts would have been futile. At the preliminary examination, the parties discussed that Kelly did not provide the police with an address and Officer Lalone stated to the court that the phone number Kelly provided was no longer in service. (ECF No. 6-2, PageID.187.) Officer Lalone further expressed that he could not subpoena Kelly based on the information provided and understood that Kelly "[was] a transient that happened to be near the bus stop." (*Id*.) Trial counsel had no current contact information for Kelly to investigate his whereabouts. Based on this information, Edwards fails to show that counsel's actions were deficient because she does not identify what additional steps counsel could have taken to locate this witness.

Additionally, aside from attaching Kelly's police statement, Edwards fails to provide any evidence suggesting that Kelly would have been available to testify at trial and does not identify what his testimony would have been. As appropriately noted by the state court, there are no facts suggesting Kelly was available to testify.

*See Coe v. Bell*, 161 F.3d 320, 342 (6th Cir. 1998) (rejecting ineffective assistance claim where "witnesses were unavailable or would not cooperate with counsel at the time of pre-trial preparation").  Moreover, Edwards fails to show that Kelly would have testified consistently with the police statement.  *See Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) (affirming denial of an ineffective assistance claim based on counsel's failure to call witnesses where a petitioner did not "introduce [ ] affidavits or any other evidence establishing what they would have said").  Such conclusory allegations of ineffective assistance of counsel without any evidentiary support cannot support a claim for habeas relief.  *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).  For these reasons, Edwards cannot establish that she was prejudiced by counsel's failure to call Kelly as a witness at trial.  *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

### b.  Failure to Obtain Medical Records

Next, Edwards argues that trial counsel was ineffective for failing to investigate the victim's mental health and subpoena relevant medical and mental health records.  Edwards asserts that the victim's mental health was at issue and that the medical records would have shown that the victim was aggressive and taking illicit drugs, supporting Edwards' claim that she acted in self-defense. Edwards further argues that counsel was ineffective for permitting a medical examiner different from the one who reviewed the victim's hospital records to

testify.  The trial court rejected these arguments on post-conviction review, finding that Edwards failed to support her position with any case law.  (ECF No. 6-20, PageID.1173.)

Edwards' arguments fare no better on habeas review as she fails to show that counsel's actions were deficient and prejudiced the outcome of the trial.  To show that a failure to prepare or investigate was unconstitutionally defective, a habeas petitioner must articulate some evidence that counsel should have pursued and how this evidence would have aided the petitioner's defense.  *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002).  Here, while trial counsel did not subpoena medical records, counsel pursued evidence of the victim's medical history and drug use through witness testimony.

For instance, during cross-examination of witness Kenneth Williams, the victim's brother, counsel inquired whether the victim had problems with mental facilities or her brain to which Williams replied: "Not that I can say, no."  (ECF No. 6-12, PageID.626.)  Later during the trial, counsel stated to the trial court that he learned that the brother left out of his testimony that the victim "actually had a mental condition and was not taking the prescribed medication.  That she was taking or instead she was substituting cocaine."  (ECF No. 6-14, PageID.1009.)  Counsel then moved to recall the brother for questioning on this issue.  The trial

court denied counsel's request on the basis that the prosecution had rested.  (*Id*. at 1010.)

Although counsel was precluded from further examining the victim's brother, he was able to elicit testimony about the victim's use of cocaine from expert witness Dr. James Lozano, who performed the autopsy of the victim and testified that the victim's toxicology report showed a positive finding for "benzoylecgonine", which is "the breakdown product of cocaine."  (ECF No. 6-12, PageID.735-36.)  Dr. Lozano opined that the level of cocaine indicated that she had used cocaine in the past, but he could not state the last time she used it.  (*Id*. at 737-38.)  He further testifed that cannabinoids—the break down of marijuana—were  found in her urine.  While Dr. Lozano testified that the levels of these substances did not suggest that the victim was recently intoxicated, on cross-examination Dr. Lozano agreed with trial counsel that blood transfusions after the incident would have diluted these substances.  (*Id*. at 747.)   From this testimony the jury could reasonably infer the possibility that the victim's drug use contributed to her aggressive behavior.  Edwards fails to overcome the presumption that counsel's exploration of the victim's mental health and/or drug use through testimony was a reasonable trial strategy.

Additionally, Edwards fails to show how requesting the victim's medical records would have changed the outcome of the trial.  Although the state court

record supports that medical records were available, Edwards merely speculates as to their relevancy and fails to proffer any evidence as to what these records might have shown, aside from the possibility that the victim was treated for mental illness around the time of the incident.  (ECF No. 1-1, PageID.26.)  For these reasons, Edwards cannot establish that she was prejudiced by counsel's conduct.

Lastly, to the extent that Edwards argues that trial counsel was ineffective for allowing Dr. Lozano to testify in substitution for the medical examiner who reviewed the victim's medical records, she fails to provide any evidence showing what the other medical examiner would have testified about and how that testimony would have affected the outcome of the trial.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation.  *See Keith v. Mitchell*, 455 F. 3d 662, 672 (6th Cir. 2006).  Accordingly, she is not entitled to relief on this claim.

### c.  Failure to Impeach

Next, Edwards argues that counsel was ineffective for failing to adequately impeach Christopher Taylor's testimony that he heard Edwards brag that she was known for "cutting bitches."  She argues that Taylor made no such statement in his preliminary examination testimony, and counsel should have used available information about Taylor's location on the bus for further impeachment.  The trial

court rejected this argument on post-conviction review.  (ECF No. 6-20, PageID.1174.)

The trial court's rejection of this argument involved neither an unreasonable application of federal law nor the facts.  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available."  *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (internal citation omitted).  Moreover, "[c]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  *Id*. (internal citation omitted).

In this case, trial counsel extensively cross-examined Taylor's testimony that Edwards stated she was known for "cutting bitches."  Trial counsel questioned why the statement was neither included in Taylor's written statement, nor his preliminary examination testimony.  (ECF No. 6-12, PageID.676-77.)  Taylor testified that he did not include that statement in his written statement to police because he didn't want his child to hear the language, but when counsel asked if his child was present for the preliminary examination, Taylor responded, "No." (*Id*.)  Further, counsel questioned Taylor regarding his position on the bus, and Taylor testified that he was seated in the back row.  (*Id*. at PageID.680.)

While Edwards may contend that counsel's cross-examination techniques could have been improved, were that to be "the standard of constitutional

effectiveness, few would be the counsel whose performance would pass muster."
*Henderson v. Norris,* 118 F.3d 1283, 1287 (8th Cir. 1997) (quoting *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996)).  The issue is not whether counsel's approach was the optimal approach or even "whether counsel's actions were reasonable." *Harrington*, 562 U.S. at 105.  The critical question is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard[.]"  *Id*.  The Court concludes that counsel's cross examination was not deficient under *Strickland*.  Moreover, Edwards fails to identify how additional cross-examination would have affected the jury's decision, and therefore, cannot show she was prejudiced by counsel's actions.

### d.  Failure to Object/Motion for Mistrial

Lastly, Edwards argues that counsel was ineffective for failing to object to the admission of evidence and failing to move for a mistrial.  Specifically, Edwards claims that the "cutting bitches" testimony elicited from Christopher Taylor and Cheetara Smith constituted new evidence related to her prior record, which the trial court ruled inadmissible.  The trial court rejected this argument on post-conviction review, concluding that "the trial court did not rule that such testimony would be inadmissible."  (ECF No. 6-20, PageID.1175.)  The Court agrees and concludes that the state-court record belies Edwards' argument.

Prior to trial, the court ruled that any evidence related to Edwards' prior criminal record would be excluded. The prosecutor then questioned the parameters of the court's ruling, and the following conversation occurred:

> Prosecutor:   My understanding of the Court's ruling at side-bar though was that you were going to exclude that piece of evidence but that the witness would still be able to testify about things she heard and saw the Defendant do leading up to the recording and what she was saying on the bus as far as far as the argument was concerned.
>
> The court:    I said that I would exclude any information about Defendant's prior record.
>
> Prosecutor:   Yes.  If that's the extent of the Court's ruling, I can certainly instruct the witness to comply with that.  But to be clear, she'll still be able to testify about what she heard and observed on the bus and saw on the bus other than that piece of evidence about a prior record?
>
> The court:    Right. Right.

(*See* ECF No. 6-11, PageID.469-470.)  It is evident from this discussion that the ruling did not prohibit the witnesses from explaining what they heard and observed on the bus.  Thus, the witnesses' testimony that they heard Edwards say to the victim "I cut bitches" was clearly admissible.  Edwards does not argue that the testimony was improper for any other reason.  It is well established that "the failure to make futile objections does not constitute ineffective assistance[.]"  *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016).  Accordingly, her claim lacks merit.

### C. Prosecutorial Misconduct

Next, Edwards argues that the prosecutor committed misconduct by eliciting testimony that she was known for "cutting bitches," and for arguing facts not in evidence during closing. These arguments were raised on post-conviction review and rejected by the trial court. (ECF No. 6-20, PageID.1177-1178.)

The trial court did not unreasonably apply federal law or contravene clearly established Supreme Court precedent or the facts. The Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986), establishes the standard for evaluating claims of prosecutorial misconduct. Under *Darden*, a prosecutor's misconduct deprives a criminal defendant of due process of law where it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *Darden* therefore sets a "high bar" for relief. *Stewart v. Trierweiler*, 867 F.3d 633, 639 (6th Cir. 2017).

Edwards fails to meet this high bar in both of her arguments. First, as discussed above, Edwards' argument that the prosecutor knowingly elicited testimony prohibited by a ruling of the trial court is belied by the state-court record. *See supra* Section III.B.d.

Second, Edwards' argument that the prosecutor committed misconduct by arguing facts not in evidence is also belied by the record. During closing, the

19

prosecutor argued that Edwards had two knives at the time of the incident, a black handled steak knife and a pocket knife.  (ECF No. 6-14, PageID.1022.)  Edwards claims that the prosecutor's statement was improper because there was testimony of only one knife, which was either a steak knife or a pocket knife, never two knives.  (ECF No. 1-1, PageID.37.)  Edwards is incorrect.  Cheetara Smith testified that she saw Edwards with a silver pocket knife clipped to her hip *and* a steak knife in her purse.  (ECF No. 6-14, PageID.958.)  When cross-examined by defense counsel, Smith confirmed her testimony that Edwards "pulled out a pocket knife", and later "took out a steak knife."  (*Id*. at PageID.980.)  Although no other witnesses testified that Edwards possessed two types of knives, the prosecutor's argument was a reasonable inference based on Smith's testimony.  *See United States v. Betro*, 115 F.4th 429, 448 (6th Cir. 2024) ("[P]rosecutors must be given leeway to argue reasonable inferences from the evidence.") (quotation omitted).  Accordingly, Edwards is not entitled to relief on her prosecutorial misconduct claim.

### D. Ineffective Assistance of Appellate Counsel

Lastly, Edwards argues that appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel and prosecutorial misconduct claims on direct appeal.  The trial court rejected this claim when denying her motion for relief from judgment.  (ECF No. 6-20, PageID.1179-1180.)

The Sixth Amendment guarantees a defendant the right to the effective assistance of appellate counsel. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985); *Halbert v. Michigan*, 545 U.S. 605, 609–10 (2005). The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Court-appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As discussed, Edwards' claims raised in this petition are meritless. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Edwards is consequently not entitled to relief.

## IV. Certificate of Appealability

The Court also denies Edwards a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make this showing, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues

presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id*. at 484.  For the reasons stated in this opinion, reasonable jurists would not find this Court's assessment of Edwards' claims to be debatable or wrong or that its procedural ruling was incorrect.

## V.    Conclusion

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's renewed motion to expedite (ECF No. 10) is **DENIED** as moot.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 8, 2025

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 8, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager